MARVIN, Chief Judge.
In this action for personal injury and property damages arising out of plaintiffs vehicle colliding with a collapsed light standard on Interstate 20 in Ruston, Frederick Loyd appeals a summary judgment effectively decreeing that the defendant state agency, DOTD, was not liable to plaintiff for the allegedly defective light standard.
Loyd contends the question of “ownership” of the light standard constitutes a genuine issue of material fact. For more than two decades, the City of Ruston has maintained and operated the lighting system. DOTD owns the land underlying the 1-20 right of way.
Finding no genuine issue of material fact and that DOTD is entitled to judgment as a matter of law, we affirm. CCP Art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
SUMMARY JUDGMENT
On September 9, 1969, DOTD, then the Department of Highways, and the City of Ruston entered into a formal contract in which the City of Ruston agreed to maintain and operate the lighting system on I-20 within the Ruston city limits that was to be constructed by an independent contractor hired by DOTD. The contract is not disputed.
The trial court founded its ruling on the 1969 contract and on LRS 33:3659 A and LRS 48:193 which are included among several statutes in Titles 33 and 48 that have been separately enacted to facilitate “lighting” of streets, roadways or highways. See e.g. LRS 48:1301 et seq., ROAD LIGHTING DISTRICTS.
The litigants argue LRS 9:2800 A, CC Arts. 2317 and 2322, and various sections of LRS Titles 48 and 33 and cases applying these statutes to support the respective arguments made for and against the summary judgment here in question.
Loyd contends LRS 33:3659 A is not applicable because DOTD has not shown that the light standard in question was constructed pursuant to LRS 33:3451 et seq. He suggests LRS 33:3451 and LRS 33:3659 A contemplate the situation where the municipality, and not DOTD, causes the lighting system to be constructed.
We note that § 3451 (in SUBPART F-l, SPECIAL STREET IMPROVEMENTS, ETC., of Title 33) pertains to municipalities of more than 2,500 population. § 3491 (in SUBPART G, SPECIAL IMPROVEMENTS [including street lighting] ALONG *1221 STREETS, of Title 33) pertains to municipalities of 100,000 or more. § 3659 (in SUBPART J, STREET LIGHTING, of Title 33) has no population specification.
While no single statute that is argued to us squarely addresses the specific factual circumstances of this record, we find that the above mentioned sections uniformly contemplate state financial and other assistance to municipalities for controlling traffic on and lighting streets and highways within municipal boundaries.
We also notice that the state, by expropriation or otherwise, may sometimes “own” either a right-of-way or the land underlying a highway that traverses a municipality. In this instance, DOTD owns the land.
Loyd suggests that the statutes in question contemplate only those municipal streets or roads that DOTD incorporates into the state highway system which continue the highway through a municipality. We might, but need not, assume that some of the statutes mentioned, which date from the 1920’s, were enacted for exactly that purpose to correspond with conditions then existing, as Loyd suggests.
Insofar as this action is concerned, however, we suggest that the uniform scheme or policy of the several statutes is discernible and consistent: Where state highways traverse municipal limits, the state expressly has statutory responsibility for some things (such as traffic signals), but not others (such as lighting) where the state has been statutorily permitted to contractually transfer responsibility to the municipality.
For example, some statutes contemplate state assistance to municipalities to provide traffic signals on state highways that traverse municipalities. LRS 48:193. That statute provides that DOTD “shall control” the signal lights. Consequently, the state may not relieve itself of liability arising out of a signal light by contractually transferring its responsibility or “control” to a municipality. Smith v. Zimmer, 553 So.2d 919 (La.App. 4th Cir.1989).
Conversely, the lighting statutes argued or mentioned above do not provide for state “control,” but provide to the contrary. LRS 48:193 A provides that the state “shall not be responsible for the maintenance of ... street lighting.” Compare LRS 48:261.
LRS 33:3659 A provides that after the lighting system requested of DOTD by the municipality has been completed and accepted, “the full ownership of it shall vest in the municipality.” Our emphasis.
Indeed, DOTD is under no general duty to construct a lighting system on its highways. See Shafouk Nor El Din Hamza v. Bourgeois, 493 So.2d 112 (La.App. 5th Cir.1986), writ denied.
IS 1-20 A STATE HIGHWAY?
Loyd would have us construe one sentence in LRS 48:191 as excluding interstate highways from the State Highway System and as precluding us from applying the Title 48 statutes to his circumstances.[1] We do not agree.
The sentence upon which Loyd relies must not be read in isolation or out of *1222 context. LRS 48:191 originally derived from Act 4 of 1942. The sentence upon which Loyd relies was added when the statute was rewritten by Act 40 of 1955 to correspond with congressional requirements for the interstate highway system earlier authorized and funded by Congress. Act 40 of 1955, now in the quoted paragraphs in the footnote, also recognized political reality that had become established in Louisiana in the 1930’s and 1940’s, by expressly requiring that DOTD locate and relocate highways in the state system in conjunction with municipalities.
Without minimizing practical political influence of parochial officials, we observe that municipalities and parishes simply are not statutorily given a legal “voice” in locating or relocating a federally promoted and financed interstate highway. That authority vests in the appropriate agencies of the state and, moreso, in the federal government. See 23 U.S.C.A. § 120(e)(1) (West 1990). Consequently, we find the intent of the sentence upon which Loyd relies is simply to relieve DOTD of the requirement that it locate interstate highways in conjunction with municipalities.
We hold that the sentence emphasized by Loyd does not remove the interstate highways in Louisiana from the State Highway System under § 191, but simply deprives municipal and parish officials of the privilege of legally participating in the determination of the location or relocation of a state highway in the interstate system.
OTHER ARGUMENTS
Loyd also contends DOTD is liable for damages under CC Art. 2317, LRS 9:2800, and CC Art. 2322. These provisions impose, in appropriate circumstances, on the owner or the custodian of a thing (Art. 2317), a building (Art. 2322 and LRS 9:2800 A), responsibility for the damage caused by the thing or the building.
LRS 9:2800 A states, “A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody." Even assuming, which we need not, that the light standard is a “building,” within the intent of LRS 9:2800 A, the light standard on 1-20 in Ruston was not, as that statute provides, within the care and custody of DOTD after the 1969 contract was executed.
The statutory scheme for lighting state highways, interstate or otherwise, is that the state may contractually transfer or delegate responsibility for the care and control of, and thus the liability arising out of, that lighting to a municipality, even though in other circumstances such a contract may not be given legal effect. See White v. Gulf States Utilities Co., 525 So.2d 145 (La.App. 3d Cir.1988). Compare Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2d Cir.1974), writ denied; Clement v. State, through DOTD, 528 So.2d 176 (La.App. 1st Cir.1988), writ denied.
CONCLUSION
By operation of law and by the 1969 contract, the City of Ruston effectively relieved the state from legal responsibility for, and assumed the position of “owner or custodian” of, the lighting system on 1-20 through Ruston. The city became responsible for custody, maintenance and operation of the lighting system on Interstate 20 within the municipal limits of Ruston insofar as legal liability may be imposed for the ruin of that system or any defects therein, notwithstanding that DOTD was the owner of Interstate 20 through Ruston.
The contract between DOTD and the City of Ruston delegating this responsibility, being one specifically that is contemplated by Titles 33 and 48, will be given legal effect.
The trial court did not err in granting DOTD’s motion for summary judgment.
DECREE
At appellant’s cost, the summary judgment is AFFIRMED.

. We quote paragraphs one and two of § 191 and emphasize the sentence relied on by Loyd:
There is hereby created and established a system of state highways which shall consist of five functional classifications as follows: state rural arterial routes and their urban extensions to include 3,300 miles; state rural major collector routes to include 7,400 miles; state rural minor collector routes to include 4,400 miles; state urban arterial routes to include 575 miles; and state urban collector routes to include 75 miles; provided that the total mileage of the five systems shall not exceed 15,750 miles, and provided further that the over plus of mileage permitted herein is allowed and fixed solely for the purpose of adjustments that might become necessary from time to time within the sole discretion of the secretary, working in conjunction with the police juries or municipalities. The five road systems hereinafter set out, the specific and detailed location or relocation of said highways to be determined by the secretary. Provided however, that nothing herein shall apply to the inclusion of new roads in the interstate system or to toll roads. '
The location of all highways in the five road systems established hereby may be altered and amended by the secretary to such an extent and in such a manner as may be necessary for the purpose of meeting any requirements in order to obtain federal aid for road construction in Louisiana. The highways system created hereby shall consist of the above *1222 five systems and the following highways in each system.